In Dockin v. Chase, the life prisoner was challenging on habeas the length of his deferral before he would again be considered for parole. This Court held that such a parole-based claim which may but will not necessarily affect the duration of the prisoner's confinement is validly brought on habeas. I'm surprised that you started with Dockin. I guess I looked at Skinner and I thought after Skinner, Dockin was over. Why was it not over? Skinner, like all the other cases that the District Court here relied on and the District Courts who were throwing prisoners out on habeas or relying on, is a 1983 case. And in the course of that discussion, all the Supreme Court cases are 1983 cases. I understand that. They're all 1983 cases, right? All the cases that are being relied on are 1983 cases and not habeas cases. And most... went right to a note, and in the note it suggested, and here's the language, in no uncertain terms that when a prisoner's claim would not necessarily spell speedier release, that claim does not lie at the core of habeas corpus and may be brought, if at all, under 1983. It isn't as if I could say, boy, this is not thought-provoking, this is not what they think, even if it's in a 1983 case and we're trying to determine whether 1983 cases should be used, if they drop a footnote in a note and they say, Wilkinson v. Dodson declared in no uncertain terms. Seems pretty convincing to me. Well, it's... If I have to go back to them and say, well, appreciate what you said there, but it doesn't make any difference, am I not making a kind of a tough argument to them? Well, there's a context to all of this, and I'd like to discuss that. Okay. First of all, Dodson did not say that. If you go back and you look at what Dodson said, what they're remarking about doesn't even mention habeas. It mentions... I mean, that's a great thing for you to argue in front of me now, what Dodson did or did not say. But this is the same court saying what it said before, and it put it in no uncertain terms. Okay. So you can argue Dodson doesn't say that. I guess you and I can even have a little argument about whether it says that or it doesn't. But I guess I'm even looking whether the sentence says that, and they were just coming from the dissent. But all I'm saying is when I get those two cases set dead set on front of me, then I'm having a tough time suggesting that I should harken back to my old precedent and say, you don't know what you're really talking about, which you're asking me to do. No, I'm not saying you say they don't know what they're talking about. Here's the context. That footnote, they have already, they go through their 1983 stuff and say that he can bring it on 1983. And then Skinner, the majority opinion in Skinner goes on to discuss the dissent. And in discussing the dissent at one point, the state's argument in Skinner was you have to look at this as the core of which is a challenge to his conviction. And the majority in Skinner had already rejected that argument. But in discussing it again, what it says is no, it doesn't go to the core of habeas. And then it drops a footnote. And in that footnote, it does in fact say that what you read. I don't challenge the wording at all. But what the suggestion is, is not only is it based on a misreading of Dotson, which I want to say something else about in a minute, but what the suggestion being made is, is that the Supreme Court reached for the first time a limitation on habeas in a case that did not present the issue without discussing the issue at all and in three words in a footnote. Do we have any Supreme Court cases that draw habeas, what's cognizable in habeas, more broadly than that? So the habeas cases discuss the legality or the validity of the conviction or sentence and the duration. But are there Supreme Court cases which say, and it can include quantum of confinement or like we said in Bostick, likely accelerate release. Is there any Supreme Court case on point? Well, most of the, yes. Pride Yourself, which was the beginning of the series of cases about habeas. It's arguable, it's arguable that quantum of confinement. But I didn't, did it say anything to draw it more broadly? No. What it says and what Dotson says and what most of the cases say is we need not address that issue because we're looking at the limits on 1983. But Prizer itself recognizes that first there can be an overlap between habeas and 1983. So the fact that you can't bring it in one, I mean the fact that you can bring it in one type of action does not mean you can't bring it in the other type of action.  But there are many cases where the Supreme Court has in fact considered on habeas claims which only are what they call the, have a sufficient nexus to the core of habeas. What's the best case for that? Well, I would say the best case for it is the California Department of Corrections versus Morales because in that case they not only considered the issue on habeas which had to do with his, it's the same issue as in Dawkins, the deferral period before he would get, but they considered it while recognizing that it was extremely unlikely that Morales himself would ever be granted parole. So there's a specific recognition in that case that this is extremely unlikely to ever affect his, the duration of his confinement, but he nevertheless can bring the claim on habeas. So we also have cases like Bostick which define the scope of habeas more broadly than just the core. And so the question for us is whether the dicta or the language in Skinner is irreconcilable with those cases. How should we evaluate that? If you look at the footnote, the three words out of the footnote in Skinner as a holding of Skinner, and if you interpret it to mean that habeas doesn't lie, right, then, yes, it would be inconsistent with Dawkins. But I'd like, the further word I wanted to say about Dodson and their Skinner's misreading of habeas, their misreading of Dodson, is that, Judge Smith, you say, well, it may be, but we can't do anything about that, right? That isn't what I said. Excuse me. But I do like to hear how you say that, but I didn't quite say that. I said they interpreted their own language however I interpret it. That's up to me, but they interpreted it that way they wanted to in Skinner. Right, and they've done that before, only to correct it later. And so I've cited in my reply brief a case about having to do with whether prayer can be before a legislative session. And there's a very similar history in the Supreme Court cases, where the Supreme Court first upheld prayer, later in upholding that there could be a nativity scene at a courthouse, recast their holding in that as saying only prayer that did not have a Christian reference could be considered. And when they later got a case challenging prayer before a legislative session that did have Christian reference, and the challengers to that law were saying that's what you said in the nativity scene case, right? And they said, well, we did say that in the nativity scene case, but it's not what we said in the case we said we set it in. And so therefore, we're going back to the original case and what we set it in. And if you go back to the original case, Dotson, Dotson quite clearly doesn't say that, and what they are referencing in that section of Dotson, Dotson specifically deals solely with 1983 cases. I had a question, if you could. How do we evaluate the fact that I think that it was the 2008 DRV, the disciplinary report violation, doesn't appear to have been considered by the parole board when they were reviewing it? Oh, I disagree with that. It was a central part. Well, I said have an impact. I'm sorry, I said didn't consider it. But didn't seem to have an impact on their determination. It looks like he had, there's a lot of factors that they consider. There were a lot of factors and there will always be a lot of factors. But to suggest it didn't, it wasn't an important factor would not be an accurate reading of that transcript. And I think in considering that issue that there are two, in considering that issue, you have to consider two things. One is that the But did they mention it at the DRV? Oh, absolutely, they discussed it, about a third of the transcript is about that disciplinary action. It was an extremely serious disciplinary action, more serious than he had had, and it will always be an extremely serious. It's a threat to kill a prison guard, which he claims is not true. It's what his challenge is. But the issue of whether habeas lies is not, is the way the courts have dealt with it, both this court and the Supreme Court. A minute over time, could you wrap up, please? Is that it's a generic discussion, that is, does the disciplinary in general, is it likely to have an impact? Not all the details of this particular case and what do we think the parole board might do with it. Thank you. May it please the Court, Andrew Woodrow, Attorney General's Office, on behalf of the appellee. Dockin has been sufficiently eroded by Dotson, Skinner and Blair to the point where it is now clearly irreconcilable with present law. Even though it's in 1983 claims rather than habeas claims and it's in footnotes and it's in me trying to figure out really what they're trying to do, it didn't have anything to do with the case? Yes, Your Honor. Tell me why. I mean, that was really the problem that I saw with counsel's argument and I wanted her to address and now I expect you to address. I mean, we did have Dockin and we had its progeny and now we've had Blair and we've had Griffin and its progeny. So we're talking out of two sides of our mouth. But we had in the meantime Skinner and before that Dotson, but really didn't control this case as such. It was a 1980, they were 1983 cases. They were really not habeas cases. And so I guess I'm trying to figure out why it all of a sudden becomes so extreme for me. Yes, Your Honor. If there was any question as to whether Dotson was one way or addressed both ways, I think that was clarified in Skinner where they specifically said that a claim that does not necessarily spell speedier release does not lie in habeas corpus and may be brought in 1983. My concern is, I mean, we know that habeas preexisted the Constitution. So this court's habeas jurisprudence is from Anglo tradition. And we've defined it in various ways. And we've been told by the Supreme Court in St. Cyr that we can't withdraw habeas without raising constitutional suspension clause issues. So if we're just thinking about the scope of habeas and habeas jurisdiction, I'm concerned about the three words in a Supreme Court case which was not addressing the scope of habeas should tell us that our habeas jurisdiction has somehow been restricted. And whether that, why wouldn't that raise constitutional issues. So help me understand that part of it. That's a big concern for me. I think the court explained to Dotson that it was consistent all along that habeas corpus is restricted to claims involving the factor duration of confinement. And so from 1789, pre-1789 until today, there's never habeas jurisdiction has always been restricted. I mean, that would be sort of a surprise in our immigration law, right, where habeas jurisdiction applies. It applies to aliens who aren't in detention. Well, it, habeas has expanded to a certain extent over the years, but I think the Supreme Court did clarify that it does concern immediate or speedier release. And that's, well, of course it does. That's the core habeas, but the question is, is that the limit of habeas so that any other type of claim in habeas we would have to reject? When a petitioner is initially bringing a claim, yes, I think the Supreme Court drew a line between habeas and 1983. And I think this Court acknowledged that. So those three words, those three words in Skinner, you're saying restricted habeas jurisdiction to solely the fact or duration and nothing else, although that issue wasn't really before them? Yes, immediate or speedier release from prison. Yes, is what habeas is. That's your position? Yes, that is the position. Okay. And I think this Court acknowledged that in Blair, that the line was drawn in Skinner and Dotson. Let's say we disagree. Let's say that Dawkins and Bostic apply. What's the best argument for Mr. Nettles or for the State, I guess? For the State, okay. Yeah. But I think, again, this Court in Blair adopted the reasoning in. Well, Blair is sort of a strange case, because Blair said, oh, this is moot, but we'll go on and tell you what we think that Skinner meant. So I don't think that that part of Blair is binding on another panel. Well, the Court did say that it was denying the petition for two independent reasons. It found mootness, and then it had the other reason. But once it's moot, can the Court give an advisory opinion about another issue? Well, the Court did say specifically it's denying. I recognize the Court did say that, yes. Right. So I would say it did deny based on those two reasons, and it did adopt the reasoning there in Dotson and Skinner. So, yes. Supposing we don't. How could expungement, I'm sorry, how could the expungement not make a difference under Bostick and Skinner? Well, I think that is foreclosed under Dotson. In Dotson, the Supreme Court held that claims challenging parole eligibility guidelines and parole suitability guidelines were available in 1983 and not in habeas, because success would not necessarily result in immediate release from prison. Mr. Nettles' claims don't fit into the core of habeas, because he did not lose any credits as a result of the disciplinary decision, and expunging the decision from his file will not necessarily invalidate his sentence or necessarily result in his immediate release. So it won't necessarily. But if we look at the language in Bostick, which is likely to accelerate, or even in Dockin has the potential to accelerate, assuming that those are good law, is this expungement likely to accelerate? Even if the Court was to apply Dockin, which I — that is not my position, but even if the Court was to apply Dockin, like the district court did, Mr. Nettles isn't entitled to relief. He had multiple rules violations. And then — Isn't that for the parole board to decide? It is for the parole board to decide. So we'd have to remand? Well, no. I would not agree with remand. I mean, if you take it away, then they'd have to look at it again, wouldn't they? But it would be an entirely discretionary decision. I mean, under California law, the board's required to consider all relevant, reliable information, but they're not required to grant parole or deny parole on any specific factor. So — Did the State court decide this on the merits, this issue? I thought this was the one that was procedurally barred. What did the State court say about this? It did not. And that was — So the State waived the procedural bar, so we would be looking at that de novo, whether there was a due process issue? I believe the State court found that he didn't exhaust his administrative remedies with two of the claims and did not reach the other claims. And that was one of the secondary arguments that was presented to the district court, was that Mr. Nettles hasn't raised a claim at all here. He didn't include a copy of the 115 prison disciplinary decision in any of the State court documents or in the Federal court documents. So there's no way the court can actually evaluate his claims in either way. But it seems — but, I mean, just looking under Bostick and Dawkin, if we go that way, I know you don't want us to, but I just — wouldn't Mr. Nettles take away any violent or drug violation for the last 15 years? I mean, it seems like this one particular disciplinary violation is making a difference of him making a statement to the parole board of, I haven't done anything along a violent nature or involving drugs in the last 15 years. It just seems like that might be material. And also, perhaps, or does it, tell me if I'm wrong, might affect the decision by him on when next to schedule his hearing? Again, this would be an entirely discretionary decision on the part of the board. And I think — But could it potentially affect if we went with that language? Applying Dawkin, I would say no, because he had received six or seven other disciplinaries during the period of time between the parole hearing in 2009 and the parole hearing in 2004. I mean, he had a very long disciplinary history, and the board denied based on other factors as well as the disciplinary history. And again, the board is not — But relating to drugs or violence? Well, so his — I mean, he's making a due process claim. The procedural — if it's procedurally barred, and we're looking at De Novo, he's making a due process claim. And so looking at De Novo, I mean, if we reached that and we determined it was recognizable and habeas, we would have to consider whether whatever his claims were about the way the proceeding was performed, whether that violated his due process rights. Is that where we are if we disagreed with you? Not necessarily, because there are other claims that we may — if this Court was to remand, there were other claims that we may raise, including exhaustion, procedural default, issues of that sort, because the record is incomplete here. But just to close — You're out of time, so can you just wrap up, please? Sure. It's the exercise of discretion by the Executive Branch in the parole process that really forecloses any argument that Nettle's success in his claims will resort in a shorter term of imprisonment. And that goes to not only the discretion of parole suitability, the discretion in whether to advance a parole date, the discretion in setting a parole date. It is riddled with discretion, and it's that discretion which means that he would not be entitled to release from prison if he would succeed on his claims. Thank you. Thank you. Any questions? I frankly find it a little bit surprising that the State would make the argument they're now making. Given habeas in 1983 and what one can do under 1983 and what procedural bars we have under habeas, I just find this to be the most fascinating argument I've ever heard. I mean, you've got so many things to deal with in habeas, and this claim being one, and yet we went for a 1983 claim, which gives them any number of ways to go after the State. I will just say that for you. I have just a tough time with why the State's going. I know where you're going, but I'm having a tough time. I understand. Clarity would be the reason. Thank you. Okay. The case of Nettles v. Brown is submitted.
judges: Ikuta, Smith, Murguia